# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

COLLEEN MALONEY,

    *Plaintiff*,　　　　　　　　　　CASE NO. 09-CV-13867

*v.*　　　　　　　　　　　　　　　　DISTRICT JUDGE AVERN COHN
　　　　　　　　　　　　　　　　　　MAGISTRATE JUDGE CHARLES E. BINDER
COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.　RECOMMENDATION

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.　REPORT

### A.　Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 14, 20.)

Plaintiff was 58 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 11, 24, 47.) Plaintiff's relevant employment includes work as a healthcare claims clerk for thirty years. (Tr. at 55.) Plaintiff filed the instant claims on March 24, 2004, alleging that she became unable to work on August 8, 2003. (Tr. at 50.) The claim was denied at the initial administrative stages. (Tr. at 44.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders and personality disorders as possible bases of disability. (*Id.*) On November 30, 2007, Plaintiff appeared before Administrative Law Judge ("ALJ") Anthony B. Roshak, who considered the application for benefits *de novo*. (Tr. at 8-26.) In a decision dated April 4, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 26.) Plaintiff requested a review of this decision on June 9, 2008. (Tr. at 7.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 10, 2009, when the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6.) On September 30, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S.

137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible

or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party.");

*accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

    **C.**    **Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of August 8, 2003, through March 31, 2011. (Tr. at 13.) At step two, the ALJ found that Plaintiff had the severe impairments of a schizoaffective disorder, anxiety disorder and depression within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15.) At step four, the ALJ found that Plaintiff had the residual functional capacity to perform her past relevant work as a claims collection and support clerk. (Tr. at 24.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform at all exertional levels that is semi-skilled in nature and that does not require doing more complex work

duties; that may require alertness and close attention to watching machine process; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. (Tr. at 16.)

### E. Administrative Record

A review of the record evidence indicates that Plaintiff was treated at Catholic Services of Macomb for mental health issues from 2001-04. (Tr. at 232-270.) In 2004, R. Hasan, M.D., diagnosed Plaintiff with schizophrenia, paranoid type in partial remission at Axis I, deferred on Axis II, bladder problem and acid reflux disease on Axis III, moderate on Axis IV and a GAF score of 50 to 55 on Axis V. (Tr. at 275.) Her prognosis was fair with treatment. (Tr. at 275.)

In 2004, a Psychiatric Review Technique indicated that Plaintiff has schizophrenic, paranoid, or other psychotic disorder (12.03) which moderately limit her ability to maintain social functioning and maintain concentration, persistence and pace, and which mildly restricts her activities of daily functioning. (Tr. at 162, 172.) A Residual Functional Capacity (RFC) Assessment completed at the same time concluded that Plaintiff is moderately limited in the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremities, and in the ability to set realistic goals or make plans independently of others. (Tr. at 177.)

Plaintiff was also treated at the Evergreen Counceling [sic] Centers from late 2004 through in 2005 (Tr. at 308-46.) In March of 2005, Plaintiff was not hearing voices but she did have some tangential thinking with mild paranoia and was struggling with past compulsive buying and thoughts of an imaginary relationship with a man she met on a cruise ship. (Tr. at 332, 336, 3.)

Throughout 2005, her counselors noted that Plaintiff was looking for a job, was hopeful that she would get job training or a job, and the counselors were supporting her in that search and were helping her make more structured use of her leisure time. (Tr. at 318, 322, 324, 330-31, 338-39, 340, 342.)

In 2005, another Psychiatric Review Technique indicated that Plaintiff has affective disorders (12.04) and personality disorders (12.08) which moderately limit her ability to maintain concentration, persistence or apce and which mildly restrict her activities of daily living and ability to maintain social functioning. (Tr. at 192, 202.) An RFC Assessment completed at the same time found Plaintiff moderately limited in the ability to carry out detailed instructions, the ability to interact appropriately with the general public, and the ability to set realistic goals or make plans independently of others. (Tr. at 206-07.) It was also noted that although Plaintiff has been on psychotropic medication since 1968, "currently [she] is alert, coherent, relevant, cooperative, no evidence of thought disorder." (Tr. at 208.)

Plaintiff also sought counseling at Advanced Counseling Services, P.C. in St. Clair Shores, Michigan, from 2006-07. (Tr. at 356-406, 409-17.) In November of 2007, A.L. Hughett, M.D., noted that "i]t is difficult to make a diagnosis. She has been hospitalized before with extensive depression. Her judgement has been poor in the past." (Tr. at 411.) Dr. Hughett found that Plaintiff had several serious limitations and estimated that Plaintiff's impairments would cause her to be absent form work about two days per month. (Tr. at 415.)

In her daily activity report, it was reported that Plaintiff watches television, goes to church, has no problems with personal care and hygiene, prepares her own meals, vacuums, dusts, washes mirrors and dishes, goes outside twice a day, walks, drives and rides in a car, is able to go out alone, shops in stores, shops by mail, is able to pay bills and handle personal finances. (Tr. at 74-80.)

Plaintiff testified that she does housework, attends church, drives herself, watches television, visits with friends, grocery shops on her own, takes care of her own personal needs. (Tr. at 420-23.)

Plaintiff testified that she can sit for a couple or three hours, and can stand for about three hours, can walk for a quarter or half a mile, and can manipulate her arms and fingers. (Tr. at 423.) Plaintiff further testified that she can lift around 10 pounds, and can carry between 10 and 20 pounds, that she has difficulty bending but does not have any trouble pushing or pulling. (Tr. at 424.) Plaintiff also testified that she does not have any trouble understanding detailed instructions, nor does she have any trouble concentrating but she does have difficulty maintaining attention. (Tr. at 424-25.) Plaintiff also indicated that she wears hearing aids, has around 20% hearing ability, does not tolerate dust or chemicals well, can climb stairs but is afraid of ladders, can kneel on the church kneeler but cannot get up from the floor, does not have any trouble squatting but has trouble crawling. (Tr. at 425-27.) Plaintiff testified that she has not been hospitalized lately. (Tr. at 430.)

Plaintiff testified that she believes she was terminated form her job of thirty years because she had not kept up with the production standards and because her supervisors were "very negative, and they wanted to get rid of me." (Tr. at 431.) Plaintiff testified that she does better if allowed to work at her own pace. (Tr. at 434.)

Plaintiff also testified that she gets up around 9:00 to go to work part-time, i.e., 20 hours per week, for the Detroit Urban League's family community center. (Tr. at 420-23, 427.) Plaintiff works as a clerical receptionist there and does not have to do any typing; rather, she greets people, shows them where they are to go, escorts them, and passes out emergency groceries. (Tr. at 434.) She stated that she does not have any problems relating with people on the job. (Tr. at 435.) When the Vocational Expert (VE) asked Plaintiff if she could come into work for eight hours a day, five

9

days a week, she responded that she could and when further asked whether she would have any problems doing that, Plaintiff responded, "No, I wouldn't have any problems." (Tr. at 437.)

The VE testified that Plaintiff could return to her prior work or that she maintains the RFC to perform other sedentary, semi-skilled jobs such as data entry, receptionist, order clerk, and scheduler jobs that are available in the amount of approximately 6,500 in the Detroit area and double that number in the state. (Tr. at 437.) The VE further testified that his testimony was consistent with the Dictionary of Occupational Titles (DOT). (Tr. at 438.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff could return to her past relevant work as a claims collection and support clerk. (Tr. at 24.) The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 238 F.3d 419, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

In determining the level of exertion required by prior work, the testimony of the VE should be compared to the DOT. *Bauer v. Barnhart*, 168 Fed. App'x 719 (6th Cir. 2006). Simply asking the VE if his testimony is consistent with the DOT satisfies the requirements under Social Security Regulation 00-4p. *Martin v. Comm'r of Social Security*, 170 Fed. App'x 369, 375-76 (6th Cir. 2006).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

2. **Substantial Evidence**

Turning first to the ALJ's alternative analysis, Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

a. **Dr. Hughett's opinion**

Plaintiff contends that the ALJ improperly discounted the opinion of Dr. Hughett, who had treated Plaintiff for over a year and a half, and whose report would support a finding of disability. (Doc. 14 at 10-11.) Plaintiff further argues that if the ALJ was unclear as to Dr. Hughett's medical source statement, he should have contacted Dr. Hughes for clarification as provided in 20 C.F.R. §404.1512(e) and S.S.R. 96-5p and 85-16 and further supplemented the record; thus, Plaintiff alternatively seeks remand. (Doc. 14 at 11.) Defendant counters that the ALJ properly evaluated Dr. Hughett's opinion which was not based on personal evaluations of Plaintiff but rather on the treatment notes of Plaintiff's therapist. (Doc. 20 at 13; Tr. at 22-23.) Since Dr. Hughett lacked personal knowledge, Defendant contends that the ALJ had a reasonable basis and provided sound reasoning to reject his opinion. (Doc. 20 at 14.)

In November of 2007, Dr. Hughett noted that "i]t is difficult to make a diagnosis. She has been hospitalized before with extensive depression. Her judgement has been poor in the past." (Tr.

at 411.) Dr. Hughett found that Plaintiff had several serious limitations and estimated that Plaintiff's impairments would cause her to be absent form work about two days per month. (Tr. at 415.)

The opinion of a treating physician is to be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). In the instant case, the ALJ properly rejected the opinion of Dr. Hughett because even assuming, *arguendo*, that he was a treating physician, his conclusion was unsupported and was inconsistent with other evidence of record. Dr. Hughett himself found Plaintiff difficult to diagnose and his opinion that she would need to be absent from work two days per month lacks foundation and conflicts with other evidence of record including Plaintiff's own testimony that she could work for eight hours a day, five days a week. (Tr. at 437.) Therefore, I suggest that the ALJ properly discounted Dr Hughett's opinion and chose not to give it controlling weight. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

### b. Lay witness testimony

Plaintiff specifically argues that the ALJ failed in his duty to develop the record by refusing to allow a lay witness, Plaintiff's sister-in-law, to testify "that [Plaintiff] cannot do the jobs that Ms. – the expert witness says [she can do.]" (Tr. at 441; Doc. 14 at 8-9.) Defendant notes that the possibility of her testifying was not brought up until the final minutes of the administrative hearing, and she was properly disallowed from testifying because she had been present during the entire hearing when she should have been sequestered. (Doc. 20 at 14; Tr. at 11.) Defendant also notes that her testimony could have been presented via an affidavit after the hearing but Plaintiff did not

do so. (Doc. 20 at 15.) Finally, Defendant argues that her testimony was not new or material, nor did she have good cause for her failure to incorporate such evidence into the record at an earlier point in the proceeding and thus, remand is not necessary. (*Id.*)

Lay witness testimony concerning a Plaintiff's ability to work is proper evidence to be considered under 20 C.F.R. §§ 416.913(d)(4) and 404.1513(d)(4). In addition, the ALJ has a duty to develop a complete record under 20 C.F.R. §§ 416.913(e) and 404.1513(e). If lay witness testimony is provided, the ALJ "cannot disregard it without comment" and "must give reasons that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, failure to consider even uncontradicted lay witness testimony may be harmless error where "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Social Security*, 454 F.3d 1050, 1056 (9th Cir. 2006). In addition, if lay witness testimony "would have been irrelevant to the Secretary's final decision," a Plaintiff's "assertion that he should have been allowed to produce lay testimony is mooted." *Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986).

In the instant case, the ALJ did not receive lay witness testimony but instead declined to allow Plaintiff's sister-in-law to testify because "Plaintiff's counsel never informed the [ALJ] that he intended to present her as a witness when he asked if she could sit in on the hearing. Otherwise, she would have been excluded from the hearing before testifying." (Tr. at 11; see also Tr. at 440-41.)

Sequestration of witnesses is not improper in administrative hearings. *Sirls v. Halter*, 252 F.3d 436, 2001 WL 360844, at *1 (5th Cir. Mar. 21, 2001)(sequestration of lay witness during plaintiff's testimony); *Watkins v. Astrue*, No. C07-1680-CRD, 2009 WL 959393, at *4 (W.D.

13

Wash. Apr. 6, 2009)(sequestration of plaintiff during lay witness testimony). Therefore, the ALJ's goal of adhering to his policy of sequestration of witnesses was not improper.

In addition, since Plaintiff had already testified that she could perform her current occupation on a full-time basis without any problems, I suggest that any lay witness testimony to the contrary would not have affected the ALJ's decision. Thus, I suggest that the ALJ's decision to prevent the lay witness from testifying was not in error, or even f it was, any error was harmless. *Landry; Stout, supra.*

## C. Conclusion

I further suggest that the hypothetical was in harmony with the objective record medical evidence as well as the daily activities described by Plaintiff herself, i.e., that she watches television, goes to church, has no problems with personal care and hygiene, prepares her own meals, vacuums, dusts, washes mirrors and dishes, goes outside twice a day, walks, drives and rides in a car, is able to go out alone, shops in stores, shops by mail, is able to pay bills and handle personal finances. (Tr. at 74-80.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, and after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific

written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
CHARLES E. BINDER
United States Magistrate Judge

Dated: August 9, 2010

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: August 9, 2010               By      s/Patricia T. Morris
                                   Law Clerk to Magistrate Judge Binder